# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONALD RICHARDSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-571** |
| **ZURICH AMERICAN INSURANCE COMPANY ET AL** | **SECTION "L" (2)** |

## ORDER & REASONS

Before the Court is Defendant Zurich American Insurance Company's Motion for Summary Judgment. R. Doc. 15. Plaintiff opposes the motion. R. Doc. 17. Defendant Great American Assurance Company also opposes the motion. R. Doc. 19. The Court held oral arguments on this matter on November 15, 2017. Having considered the parties' arguments, submissions, and the applicable law, the Court now issues this Order and Reasons.

### I. BACKGROUND

This case arises from injuries Plaintiff Ronald Richardson ("Richardson") allegedly sustained in a collision between two 18-wheelers. Richardson Trucking LLC is a Louisiana company of which Ronald Richardson is the sole member. Richardson Trucking LLC and Ronald Richardson entered in to a one-year leasing agreement to carry loads for D & T Holdings.

On January 13, 2016, Richardson drove his truck to Dubach, Louisiana to deliver a load of sand. Richardson drove to Greenwood, Louisiana to spend the night and have a tire replaced on the truck. He notified D & T Holdings that he had completed the delivery and needed a new tire. The D & T Holdings dispatcher told him to call after the tire was replaced and he was available for a new load. The next morning, January 14, 2016, Plaintiff was inside his truck when an

1

unknown driver in an 18-wheeler struck Plaintiff's vehicle. R. Doc. 1-4 at 1. The unknown driver then fled the scene.

At the time of the accident, Plaintiff alleges he was working on behalf of 1845 Oilfield Transport, LLC. Plaintiff alleges Defendant Zurich American Insurance Company ("Zurich") provided insurance coverage to and on behalf of 1845 Oilfield Transport, LLC ("D & T Holdings"). Defendant Great American Assurance Company ("Great American") provided underinsured/uninsured insurance coverage to Plaintiff. R. Doc. 1-4 at 2. Plaintiff claims that both insurance companies have refused to make any tender under the policies despite receiving adequate proof of loss. R. Doc. 1-4 at 3. Plaintiff claims that Defendants Zurich and Great American's failure to make tender on his claim is in bad faith and therefore he is entitled to statutory damages and attorney's fees. R. Doc. 1-4 at 4. Plaintiff brought this action in the Civil District Court for the Parish of Orleans and Defendants removed to this Court on the basis of diversity. R. Doc. 1 at 1.

Defendant Zurich answers and denies all allegations in Plaintiff's complaint. R. Doc. 5 at 1-2. Zurich admits it was the insurer for D & T Holdings and provided coverage to Plaintiff while his truck was being used by or for D & T Holdings. R. Doc. 5 at 2. However, Zurich alleges Plaintiff's truck was not being used by or for D & T Holdings at the time of the alleged accident. R. Doc. 5 at 2. Zurich denies that it received adequate proof of loss and is therefore not obligated to make a tender under the policy issued to D & T Holdings. R. Doc. 5 at 3-4.

Defendant Great American answers and denies the allegations in Plaintiff's complaint. R. Doc. 6 at 1-3. Defendant asserts that Plaintiff has not provided adequate proof that the driver in the alleged accident was uninsured. Therefore Great American contends it cannot be held liable until it receives proof that Plaintiffs injuries and damages exhaust the limits of the tortfeasor's coverage. R. Doc. 6 at 1-3.

## II. PRESENT MOTION

Defendant Zurich moves for summary judgment and dismissal of Plaintiff's claims against it. R. Doc. 15. Defendant argues that it is not liable to Plaintiff because Plaintiff was not "in the business" of D & T Holdings at the time of the accident, Plaintiff is covered by an insurance policy provided by Defendant Great American, and that the Great American policy is the primary UM coverage. R. Doc. 15-1 at 1. Therefore, Defendant Zurich argues that Plaintiff's claims for damages, penalties, and attorney fees should be dismissed with prejudice. R. Doc. 15-1 at 1.

Plaintiff responds in opposition, arguing that he was acting in the business of D & T Holdings at the time of the incident and therefore, Zurich's policy covers his damages. R. Doc. 17 at 4. Plaintiff argues that he was furthering the commercial interests of D & T Holdings at the time of the accident because he was not heading home but rather to prepare the truck for more work. R. Doc. 17 at 8-9. Defendant Great American also responds in opposition. R. Doc. 19. Because the truck in question was leased by D & T Holdings for one (1) year, American argues that it is a covered auto even if it was not being used in the business of D & T Holdings at the time of the accident. R. Doc. 19 at 11. Second, Great American argues that Plaintiff was in the business of D & T Holdings at the time of the accident. R. Doc. 19 at 9.

## III. LAW & ANALYSIS

### a. Summary Judgment Standard (Fed. R. Civ. P. 56)

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *see also Anderson*, 477 U.S. at 249-50. In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence, review the facts and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

b. **Interpretation of Insurance Policies**

The basis of this Court's jurisdiction is diversity of citizenship. Thus, Louisiana law applies. Under Louisiana law, insurance policies must be interpreted in accordance with the rules for interpreting contracts in general. *Cadwallader v. Allstate Ins. Co.*, 02–1637, p. 3 (La.6/27/03); 848 So.2d 577, 580 ("An insurance policy is a contract between the parties and should be construed using the general rules of interpretation set forth in the Louisiana Civil Code."). Additionally, the

4

words and phrases used in an insurance policy are to be construed using their plain, ordinary, and generally prevailing meaning. La. Civ. Code art. 2047 ("The words of a contract must be given their generally prevailing meaning."). Courts applying Louisiana law are not permitted to interpret an insurance policy in a manner that would threaten to modify what is reasonably contemplated by the policy's unambiguous terms. La. Civ. Code art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.").

When language in a contract is clear and unambiguous, it is enforced as written. *Smith v. Matthews*, 611 So.2d 1377, 1379 (La. 1993). But, if there are ambiguous provisions they are interpreted in favor of coverage and against the insurer who issued or wrote the policy. *Id.* Additionally, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050.

### c. "In the Business" Standard

The Fifth Circuit has held that, in an insurance contract, "the phrase 'in the business of' . . . is unambiguous [and] is properly resolved as a matter of law on a motion for summary judgment." *Mahaffey v. Gen. Sec. Ins. Co.*, 543 F.3d. 738, 741 (5th Cir. 2008). Louisiana law does not provide a definition of when an independent trucker who drives a truck leased to a transportation company is "in the business" of the transportation company. However, courts have provided a non-exhaustive list of factors to consider when determining whether such a trucker is "in the business" of a transportation company at the time of an accident.

In *Mahaffey v. General Security Insurance Company*, the Fifth Circuit held a truck driver was "in the business" of the lessee transportation company although he had completed his delivery but was not heading home and was on standby for future deliveries. *Id.* at 742. There, the truck

driver dropped off a load and was told by the transportation company to take the night off, rest in a nearby hotel, and call in the morning to see if they had a load. *Id.* The court reasoned that even though the driver was not paid for his time and mileage overnight and was "free to go where he pleased," the driver was furthering the commercial interests of the transportation company by staying in the area and was ready to pick up a load. *Id.* at 742-43.

The Fifth Circuit compared the facts in *Mahaffey* to those in *LeBlanc v. Bailey* where the court held that the driver was not "in the business" of the lessee transportation company when he was driving home after making a delivery. 97-0388 (La. App. 4 Cir. 10/1/97); 700 So.2d 1311. There, the driver was paid based on the revenue of the delivery or mileage and was not paid for mileage to and from his home. *Id.* at p.5; 700 So.2d at 1314. The court reasoned that because the driver was on his way home, not subject to the control or direction of the transportation company, not under pre-dispatch for a delivery, and not paid for the mileage on his way home, that "his drive home was more of a personal nature rather than a work-related function." *Id.* at p.6; 700 So.2d at 1314.

### d. Discussion

Here, there is no dispute that both the Zurich and Great American policies provided coverage for Richardson's truck. The dispute centers around whether the Zurich policy provided coverage at the time the accident occurred, and if so, which policy is primary.

On January 13, 2016, Plaintiff Richardson dropped off a load of sand in Dubach, Louisiana. Richardson had picked up this load in Tyler, Texas. Anticipating another load in Tyler, Texas but noting that his truck needed a new tire, Richardson stopped in Greenwood, Louisiana, which is about halfway between Dubach and Tyler. When in Greenwood, Richardson notified D & T Holdings that he needed to have his tire replaced. D & T Holdings dispatcher told him to call when

the replacement was complete and he was ready for a new load. Richardson spent the night in Greenwood at the Flying J Truck Stop. On the morning of January 14, 2017, Richardson got a cup of coffee and before leaving the Flying J Truck Stop to get the tire was struck by another driver.

While the facts in this case are closer than those in *Mahaffey*, the facts suggest that Plaintiff Richardson was "in the business" of D & T Holdings at the time of the accident. An important factor is whether Richardson was on standby for another delivery or whether he was conducting activities of a personal nature, such as driving home. Like the driver in *Mahaffey*, Richardson was not heading home but rather was moving toward the location where he anticipated picking up his next delivery. In deposition testimony, Richardson stated,

> Well, I needed tires replaced. And . . . Greenwood was, so to speak, the halfway point between Dubach and Tyler, in anticipation that I would be getting another load of sand to pick up in Tyler. . . . I went to the Flying J, again, the central location, in anticipation of getting another load, you know, of sand from Tyler, and also to safely park and to be . . . in close proximity to the tire shop.

Furthermore, Richardson was not stopping to visit friends or family or to purchase personal items such as fishing gear. Rather, he was stopping to complete maintenance required under his lease with D & T Holdings. Richardson was under a year-long lease with D & T Holdings and would work steadily for six to eight weeks before taking a break. While Richardson was free to go where he wanted, at the time of the accident, he was serving the commercial interests of D & T Holding by performing required maintenance on the truck and moving in the direction of the next load. In fact, he was moving away from his home in New Orleans and toward the location where it was likely he would have picked up a new load of sand. Therefore, Richardson was furthering the commercial interests of D & T Holdings by ensuring that his truck was maintained and available for the next load. Accordingly, Richardson was acting in the business of D & T Holdings at the time of the accident as a matter of law.

7

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion for Summary Judgment, R. Doc. 15, is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File Reply, R. Doc. 22, is **DISMISSED AS MOOT**.

New Orleans, Louisiana this 16th day of November, 2017.

*Eldon E. Fallon*
UNITED STATES DISTRICT JUDGE